

**U.S. Department of Justice**

*Leah B. Foley*
*United States Attorney*
*District of Massachusetts*

---

*Main Reception: (617) 748-3100*

*John Joseph Moakley United States Courthouse*
*1 Courthouse Way*
*Suite 9200*
*Boston, Massachusetts 02210*

July 24, 2026

Henry B. Brennan
Brennan & Associates
20 Park Plaza, Suite 400
Boston, MA 02116

Nat Carney
Carney, Gaudet & Carney
20 Park Plaza, Ste 614
Boston, MA 02116

> Re:  <u>United States v. Scott Kelley</u>
> Criminal No. 25-10355-ADB

Dear Counsel:

The United States Attorney for the District of Massachusetts (the "U.S. Attorney") and your client, Scott Kelley ("Defendant"), agree as follows, pursuant to Federal Rule of Criminal Procedure 11(c)(1)(B):

### 1. Change of Plea

As soon as possible, Defendant will plead guilty to Counts 1-5 of the Indictment, charging wire fraud, in violation of 18 U.S.C. § 1343; Counts 6-10, charging mail fraud, in violation of 18 U.S.C. § 1341; Counts 11-15, charging Mail Theft by Postal Officer, in violation of 18 U.S.C. § 1709; Counts 17-39, charging Money Laundering, in violation of 18 U.S.C. § 1956(a)(1)(B)(i); Count 40, charging Structuring to Evade Reporting Requirements, in violation of 31 U.S.C. § 5324(a)(3); and Counts 41-45, charging Filing False Tax Returns, in violation of 26 U.S.C. § 7206(1). Defendant admits that Defendant committed the crimes specified in these counts and is in fact guilty of each one.

The U.S. Attorney agrees to dismiss the following count of the Indictment upon the imposition of sentence at the sentencing hearing in this matter: Count 16, charging Theft of Government Money, in violation of 18 U.S.C. § 641.

1

2.    Penalties

Defendant faces the following maximum penalties:

a.  On each of Counts 1-5 (Wire Fraud), Counts 6-10 (Mail Fraud), and Counts 17-39 (Money Laundering): incarceration for 20 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

b.  On each of Counts 11-15 (Mail Theft by Postal Officer) and Count 40 (Structuring): incarceration for 5 years; supervised release for 3 years; a fine of $250,000; a mandatory special assessment of $100; restitution; and forfeiture to the extent charged in the Indictment.

c.  On each of Counts 41-45 (False Tax Returns): incarceration for 3 years; supervised release for 1 year; a fine of $100,000; a mandatory special assessment of $100; and restitution.

3.    Sentencing Guidelines

The U.S. Attorney agrees to take the position, based on the following calculations, that Defendant's total "offense level" under the Guidelines is 25:

a.  Counts of Conviction

1)  *Counts 1-10 (Wire and Mail Fraud): Offense Level 27*

i)  Defendant's base offense level is 7, because the offenses of conviction have a statutory maximum term of imprisonment of 20 years or more (USSG §2B1.1(a)(1));

ii)  Defendant's offense level is increased by 12, because the loss amount is between $250,000 and $550,000 (USSG §2B1.1(b)(1)(G));

iii)  Defendant's offense level is increased by 2, because the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG §2B1.1(b)(10));

iv)  Defendant's offense level is increased by 4, because Defendant knew or should have known that a victim of the offense was a vulnerable victim and the offense involved a large number of vulnerable victims (USSG §3A1.1(b)(2)); and

v)  Defendant's offense level is increased by 2, because Defendant abused

2

a position of public trust in a manner that significantly facilitated the commission or concealment of the offense (USSG §3B1.3).

2) *Counts 11-15 (Mail Theft): Offense Level 26*

  i)  Defendant's base offense level is 6 (USSG §2B1.1(a)(2));

  ii)  Defendant's offense level is increased by 12, because the loss amount is between $250,000 and $550,000 (USSG §2B1.1(b)(1)(G));

  iii)  Defendant's offense level is increased by 2, because the offense involved sophisticated means and Defendant intentionally engaged in or caused the conduct constituting sophisticated means (USSG §2B1.1(b)(10));

  iv)  Defendant's offense level is increased by 4, because Defendant knew or should have known that a victim of the offense was a vulnerable victim and the offense involved a large number of vulnerable victims (USSG §3A1.1(b)(2)); and

  v)  Defendant's offense level is increased by 2, because Defendant abused a position of public trust in a manner that significantly facilitated the commission or concealment of the offense (USSG §3B1.3).

3) *Counts 17-39 (Money Laundering): Offense Level 27*

  i)  Defendant's base offense level is 25, because Defendant committed the underlying offenses from which the laundered funds were derived and the offense level for those offenses can be determined; and the offenses of conviction have a statutory maximum term of imprisonment of 20 years or more (USSG §2S1.1(a)(1), §2B1.1(a)); and

  ii)  Defendant's offense level is increased by 2, because the offense of conviction is 18 U.S.C. § 1956 (USSG §2S1.1(b)(2)(B)).

4) *Count 40 (Structuring): Offense Level 14*

  i)  Defendant's base offense level is 6, plus 4 because the value of the funds was between $15,000 and $40,000 (USSG §2S1.3(a)(2), §2B1.1(b)(1)(C));

  ii)  Defendant's offense level is increased by 2, because Defendant knew or believed that the funds were proceeds of unlawful activity (USSG §2S1.3(b)(1)(A)); and

  iii)  Defendant's offense level is increased by 2, because Defendant was

3

convicted of an offense under subchapter II of chapter 53 of Title 31, and he committed the offense while violating another law of the United States (USSG §2S1.3(b)(2)).

5) *Counts 41-45 (False Tax Returns): Offense Level 16*

   i) Defendant's base offense level is 14, because the tax loss is between $40,000 and $100,000 (USSG §2T1.1(a)(1), §2T4.1(E)); and

   ii) Defendant's offense level is increased by 2 because KELLEY failed to report the source of income exceeding $10,000 in any year from criminal activity (USSG §2T1.1(b)(1)).

b. Grouping

   1) Pursuant to USSG § 3D1.2(d), Counts 1-15 and 17-40 form a single group because the offense level is determined largely on the basis of the total amount of harm or loss (Group One). Counts 17-39 are also grouped with Group One pursuant to USSG § 2S1.1 App. Note 6.

   2) Pursuant to *United States v. Martin*, 363 F.3d 25, 41-44 (1st Cir. 2004), Counts 41-45 form a separate  group (Group Two). Pursuant to USSG §3D1.4(c), Group Two is disregarded because it is 9 or more levels less serious than Group One.

c. Acceptance of Responsibility

   Defendant's offense level is decreased by 2, because Defendant has accepted responsibility for Defendant's crimes (USSG §3E1.1(a)). The Total Adjusted Offense Level is 25.

Notwithstanding the foregoing, if the proposed amendments to United States Sentencing Guideline § 2B1.1(b)(1) ("Proposed Loss Table Amendment") become effective prior to Defendant's sentencing hearing, the U.S. Attorney will recommend that Defendant's offense level be reduced by two levels pursuant to that provision. If the sentencing hearing occurs prior to November 1, 2026, the U.S. Attorney will recommend that Defendant receive a two-level downward variance pursuant to 18 U.S.C. § 3553(a) to account for the Proposed Loss Table Amendment; in exchange for this recommendation, Defendant agrees to not seek a further reduced sentence based on the Proposed Loss Table Amendment.

Defendant understands that the Court is not required to follow this calculation or even to sentence Defendant within the Guidelines and that Defendant may not withdraw Defendant's guilty plea if Defendant disagrees with how the Court calculates the Guidelines or with the sentence the Court imposes.

Defendant also understands that the government will object to any reduction in Defendant's

sentence based on acceptance of responsibility if: (a) at sentencing, Defendant (directly or through counsel) indicates that Defendant does not fully accept responsibility for having engaged in the conduct underlying each of the elements of the crimes to which Defendant is pleading guilty; or (b) by the time of sentencing, Defendant has committed a new federal or state offense, or has in any way obstructed justice.

If, after signing this Agreement, Defendant's criminal history score or Criminal History Category is reduced, the U.S. Attorney reserves the right to seek an upward departure under the Guidelines.

Nothing in this Plea Agreement affects the U.S. Attorney's obligation to provide the Court and the U.S. Probation Office with accurate and complete information regarding this case.

4.      Sentence Terms to Be Recommended by the U.S. Attorney

The U.S. Attorney agrees to recommend the following terms of the sentence to the Court:

    a) incarceration at the low end of the Guidelines sentencing range as calculated by the U.S. Attorney;

    b) 36 months of supervised release; and

    c) a fine at the low end of the Guidelines sentencing range as calculated by the U.S. Attorney.

Defendant remains free to argue for any sentence of imprisonment, supervised release, and/or fine.

5.      Sentence Terms to Be Recommended by the Parties

The parties agree to recommend the following additional terms of the sentence to the Court:

    a) Restitution as set forth in Paragraph 7;

    b) Forfeiture as set forth in Paragraph 8; and

    c) a mandatory special assessment of $4,400, which Defendant must pay to the Clerk of the Court by the date of sentencing.

Defendant agrees that all criminal monetary penalties, including special assessment, restitution, forfeiture, and/or fine imposed shall be due and payable immediately to the extent not otherwise set forth in this plea agreement, and further agrees that any Court-ordered repayment schedule does not preclude further enforcement or collection by the United States.

6.      <u>Waiver of Appellate Rights and Challenges to Conviction or Sentence</u>

Defendant has the right to challenge Defendant's conviction and sentence on "direct appeal." This means that Defendant has the right to ask a higher court (the "appeals court") to look at what happened in this case and, if the appeals court finds that the trial court or the parties made certain mistakes, overturn Defendant's conviction or sentence.  Also, in some instances, Defendant has the right to file a separate civil lawsuit claiming that serious mistakes were made in this case and that Defendant's conviction or sentence should be overturned.

Defendant understands that Defendant has these rights, but now agrees to give them up. Specifically, Defendant agrees that:

a)  Defendant will not challenge Defendant's <u>conviction</u> on direct appeal or in any other proceeding, including in a separate civil lawsuit;

b)  Defendant will not challenge Defendant's <u>sentence,</u> including any court orders related to restitution, fines or supervised release, on direct appeal or in any other proceeding, including in a separate civil lawsuit; and

Defendant understands that, by agreeing to the above, Defendant is agreeing that Defendant's conviction and sentence will be final when the Court issues a written judgment after the sentencing hearing in this case. <u>That is, after the Court issues a written judgment, Defendant will lose the right to appeal or otherwise challenge Defendant's conviction and sentence, regardless of whether Defendant later changes Defendant's mind or finds new information that would have led Defendant not to agree to give up these rights in the first place.</u>

Defendant is agreeing to give up these rights at least partly in exchange for concessions the U.S. Attorney is making in this Agreement.

The parties agree that, despite giving up these rights, Defendant keeps the right to later claim that Defendant's lawyer rendered ineffective assistance of counsel, or that the prosecutor or a member of law enforcement involved in the case engaged in misconduct serious enough to entitle Defendant to have Defendant's conviction or sentence overturned.

7.      <u>Restitution</u>

a)  Within 48 hours after the Court accepts the Defendant's plea of guilty to Counts 1-15 and 17-40 of the Indictment, Defendant will transfer $62,000 (the "Escrow Funds") to his counsel's law firm, Carney, Gaudet & Carney (the "Escrow Agent"), to be held in escrow for purposes of effectuating the terms of this agreement and for no other purpose. The addresses and payment instructions for Victims One, Two, Three, Four, Five, Six, Seven, and Eight listed below (the "Payees") will be provided to the Escrow Agent by the U.S. Attorney as soon as is practicable. Upon transfer of the Escrow Funds to the Escrow Agent in accordance with this provision, and within two business days after the U.S.

Attorney identifies the Payees' addresses and payment instructions, the Escrow Agent shall disburse by way of cashier's check (or similar guaranteed instrument), and send by FedEx or other commercial courier, the following amounts to the Payees:

    i.   $19,100 to the person identified in the Indictment as Victim One;

    ii.   $7,500 to the person identified in the Indictment as Victim Two;

    iii.   $2,000 to the person identified in the Indictment as Victim Three;

    iv.   $5,400 to the person identified in the Indictment as Victim Four;

    v.   $15,000 to the person identified in the Indictment as Victim Five;

    vi.   $1,400 to the person identified in the Indictment as Victim Six;

    vii.   $10,800 to the person identified in the Indictment as Victim Seven;

    viii.   $800 to an additional victim who is not identified in the Indictment but whose identity is known to the parties ("Victim Eight").

The Government reserves the right to seek additional victim restitution at sentencing if it identifies any additional victims with identifiable loss amounts. Defendant reserves the right to object, including by requesting an evidentiary hearing.

b) Defendant agrees to pay $71,816 to the Clerk of Court for the District of Massachusetts for restitution due to the Internal Revenue Service after judgment is entered.

8.    <u>Forfeiture</u>

Defendant understands that the Court will, upon acceptance of Defendant's guilty plea, enter an order of forfeiture as part of Defendant's sentence, and that the order of forfeiture may include assets directly traceable to Defendant's offense, assets used to facilitate Defendant's offense, substitute assets, and/or a money judgment equal to the value of the property derived from, or otherwise involved in, the offense.

The assets to be forfeited specifically include, without limitation, the following:

a.    an Order of Forfeiture (Money Judgment) in an amount to be determined at sentencing.

Defendant admits that $62,000 is subject to forfeiture on the grounds that it is equal to the amount of proceeds the defendant derived from the offense. The government contends that $339,898 is subject to forfeiture because that sum is equal to the amount of proceeds the defendant

derived from the offenses. Defendant reserves the right to contest any motion for a forfeiture money judgment in excess of $62,000.

Defendant acknowledges and agrees that the amount of the forfeiture money judgment represents proceeds the Defendant obtained (directly or indirectly), and/or facilitating property and/or property involved in, the crimes to which Defendant is pleading guilty and that, due at least in part to the acts or omissions of Defendant, the proceeds or property have been transferred to, or deposited with, a third party, spent, cannot be located upon exercise of due diligence, placed beyond the jurisdiction of the Court, substantially diminished in value, or commingled with other property which cannot be divided without difficulty. Accordingly, Defendant agrees that the United States is entitled to forfeit as "substitute assets" any other assets of Defendant up to the value of the now missing directly forfeitable assets.

Defendant agrees to consent to the entry of an order of forfeiture for such property and waives the requirements of Federal Rules of Criminal Procedure 11(b)(1)(J), 32.2, and 43(a) regarding notice of the forfeiture in the charging instrument, advice regarding the forfeiture at the change-of-plea hearing, announcement of the forfeiture at sentencing, and incorporation of the forfeiture in the judgment. Defendant understands and agrees that forfeiture shall not satisfy or affect any fine, lien, penalty, restitution, cost of imprisonment, tax liability or any other debt owed to the United States.

If the U.S. Attorney requests, Defendant shall deliver to the U.S. Attorney within 30 days after signing this Plea Agreement a sworn financial statement disclosing all assets in which Defendant currently has any interest and all assets over which Defendant has exercised control, or has had any legal or beneficial interest. Defendant further agrees to be deposed with respect to Defendant's assets at the request of the U.S. Attorney. Defendant agrees that the United States Department of Probation may share any financial information about the Defendant with the United States Attorney's Office.

Defendant also agrees to waive all constitutional, legal, and equitable challenges (including direct appeal, habeas corpus, or any other means) to any forfeiture carried out in accordance with this Plea Agreement.

Defendant hereby waives and releases any claims Defendant may have to any vehicles, currency, or other personal property seized by the United States, or seized by any state or local law enforcement agency and turned over to the United States, during the investigation and prosecution of this case, and consents to the forfeiture of all such assets.

9.    Civil Liability

This Plea Agreement does not affect any civil liability, including any tax liability, Defendant has incurred or may later incur due to Defendant's criminal conduct and guilty plea to the charges specified in Paragraph 1 of this Agreement.

10.    Breach of Plea Agreement

Defendant understands that if Defendant breaches any provision of this Agreement (including but not limited to payment of restitution to the Payees pursuant to the schedule set forth in Paragraph 7(a)), violates any condition of Defendant's pre-trial release, or commits any crime following Defendant's execution of this Plea Agreement, Defendant cannot rely upon such conduct to withdraw Defendant's guilty plea. Defendant's conduct, however, would give the U.S. Attorney the right to be released from the U.S. Attorney's commitments under this Agreement, to pursue any charges that were, or are to be, dismissed under this Agreement, and to use against Defendant any of Defendant's statements, and any information or materials Defendant provided to the government during investigation or prosecution of Defendant's case—even if the parties had entered any earlier written or oral agreements or understandings about this issue.

Defendant also understands that if Defendant breaches any provision of this Agreement or engages in any of the aforementioned conduct, Defendant thereby waives any defenses based on the statute of limitations, constitutional protections against pre-indictment delay, and the Speedy Trial Act, that Defendant otherwise may have had to any charges based on conduct occurring before the date of this Agreement.

11.    Who is Bound by Plea Agreement

This Agreement is only between Defendant and the U.S. Attorney for the District of Massachusetts. It does not bind the Attorney General of the United States or any other federal, state, or local prosecuting authorities.

12.    Modifications to Plea Agreement

This Agreement can be modified or supplemented only in a written memorandum signed by both parties, or through proceedings in open court.

*        *        *

If this letter accurately reflects the agreement between the U.S. Attorney and Defendant, please have Defendant sign the Acknowledgment of Plea Agreement below. Please also sign below as Witness. Return the original of this letter to Assistant U.S. Attorney Christine Wichers.

Sincerely,

LEAH B. FOLEY
United States Attorney

By:    DUSTIN CHAO
Chief, Public Corruption Unit

CHRISTINE WICHERS
ERIC L. HAWKINS
Assistant U.S. Attorneys

10

## ACKNOWLEDGMENT OF PLEA AGREEMENT

I have read this letter and discussed it with my attorney. The letter accurately presents my agreement with the United States Attorney's Office for the District of Massachusetts. There are no unwritten agreements between me and the United States Attorney's Office, and no United States government official has made any unwritten promises or representations to me in connection with my guilty plea. I have received no prior offers to resolve this case.

I understand the crimes I am pleading guilty to, and the maximum penalties for those crimes. I have discussed the Sentencing Guidelines with my lawyers, and I understand the sentencing ranges that may apply.

I am satisfied with the legal representation my lawyers have given me, and we have had enough time to meet and discuss my case. We have discussed the charges against me, possible defenses I might have, the terms of this Agreement and whether I should go to trial.

I am entering into this Agreement freely and voluntarily and because I am in fact guilty of the offenses. I believe this Agreement is in my best interest.

Scott Kelley
Defendant

Date: 7/24/26

We certify that Scott Kelley has read this Agreement and that we have discussed what it means. We believe Mr. Kelley understands the Agreement and is entering into it freely, voluntarily, and knowingly. We also certify that the U.S. Attorney has not extended any other offers regarding a change of plea in this case.

Henry B. Brennan
Nat Carney
Attorneys for Defendant

Date: 7/24/26

11